### MEDERO v. LA COMPAGNIE GENERALE TRANSATLANTIQUE.

(District Court, S. D. New York. May 14, 1903.)

**1. COLLISION—STEAM AND SAILING VESSELS—FAILURE OF STEAMER TO KEEP OUT OF THE WAY.**

A steamer *held* solely in fault for a collision with a schooner, the primary cause of which was an endeavor on the part of the steamer to compel the schooner to change her course, which she refused to do, as was her right and duty under the rules, but kept her course until immediately before the collision when in extremis.

In Admiralty. Suit for collision.

McFarland, Taylor & Costello, for libellant.

Edward K. Jones, for respondent.

ADAMS, District Judge. This is an action brought by the libellant, the master and part owner of the Schooner Lois V. Chaples, against the respondent, the owner of the Steamer St. Simon, for the damages resulting from a collision between those vessels, which took place on the 5th day of April, 1899, in the harbor of Cape Haytien, in the Island of Santo Domingo. The schooner was bound, under full sail, out of the harbor, which the steamer was entering. The schooner's course was about north, keeping the main land on her port hand and thus passing Picolet Point. The steamer in her approach to the harbor was headed about for Picolet Point, on a course about South by West. The vessels collided just off Picolet Point, near the land, the steamer's port bow coming in contact with the schooner's bowsprit and stem.

The respondent's principal defense in the answer is that the schooner changed her course, but it finds little support in the evidence. The master of the steamer, who was on the bridge and in charge of her navigation, testified, in answer to a general interrogatory:

"I am able to say that if the captain of the schooner had permitted me to continue upon my normal route as I intended, no accident could have occurred, as he had a passage of 900 meters in width. If the schooner had given me only ten meters of distance between Cape Picolet and itself, there would have been ample room for me. The catastrophe was wholly due to the obstinacy of the captain of the schooner, who was determined that I should not pass as I desired and as I had by whistle signalled to him my desire to do. He evidently wished to immediately take his direction for New York, and clearly did not propose to concede anything to me."

As a matter of fact, there was no change of course on the part of the schooner until the vessels were within from fifty to one hundred yards of each other, when she probably changed to port in an endeavor to avoid the collision, but she can not be held in fault for such change, which was made in extremis.

It is clear that the primary cause of the collision was an endeavor on the part of the steamer to compel the schooner to change her course to the starboard to suit the steamer's convenience. The schooner was within her legal rights in refusing to make the change and the steamer was obviously in fault for the collision.

It is urged that the schooner was in fault for not having a proper lookout. She did not fail in her duty to observe the movements of the steamer and the question of lookout is unimportant.

Decree for the libellant, with an order of reference.